1

2

3

4

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

5

6

SAMUEL P.,

7
                              Plaintiff,

8
        v.

9
COMMISSIONER OF SOCIAL SECURITY,

10
                              Defendant.

Case No. 20-5881

ORDER REVERSING AND
REMANDING DEFENDANT'S
DECISION TO DENY BENEFITS

11

12      Plaintiff has brought this matter for judicial review of defendant's denial of his

13 applications for disability insurance (DIB) and supplemental security income (SSI)

14 benefits.

15      The parties have consented to have this matter heard by the undersigned

16 Magistrate Judge. 28 U.S.C. § 636(c); Federal Rule of Civil Procedure 73; Local Rule

17 MJR 13.

18                        I.      ISSUES FOR REVIEW

19      1.  Did the ALJ properly evaluate the medical opinion evidence?

20      2.  Did the ALJ properly evaluate Plaintiff's subjective symptom testimony?

21      3.  Did substantial evidence support the ALJ's RFC determination?

22                        II.      BACKGROUND

23      On April 17, 2017 and April 25, 2017, Plaintiff filed applications for DIB and

24 Supplemental Security Income ("SSI"), respectively, alleging in both applications a

25

ORDER REVERSING AND REMANDING
DEFENDANT'S DECISION TO DENY BENEFITS - 1

1  disability onset date of November 1, 2016. Administrative Record ("AR") 366, 368.

2  Plaintiff's applications were denied upon official review and upon reconsideration (AR

3  152–53, 184–85) and a hearing was held before Administrative Law Judge ("ALJ")

4  Joanne Dantonio on July 18, 2019. *See* AR 43–54, 55–72, 73–95, 96–151. On

5  September 25, 2019, ALJ Dantonio issued a decision finding that Plaintiff was not

6  disabled. AR 12–42. On June 26, 2020, the Social Security Appeals Council denied

7  Plaintiff's request for review. AR 1–6.

8      Plaintiff seeks judicial review of the ALJ's July 18, 2019 decision. Dkt. 6.

9  III.   <u>STANDARD OF REVIEW</u>

10      Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's

11  denial of Social Security benefits if the ALJ's findings are based on legal error or not

12  supported by substantial evidence in the record as a whole. *Revels v. Berryhill*, 874

13  F.3d 648, 654 (9th Cir. 2017). Substantial evidence is "such relevant evidence as a

14  reasonable mind might accept as adequate to support a conclusion." *Biestek v.*

15  *Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal citations omitted).

16  IV.   <u>DISCUSSION</u>

17      In this case, the ALJ found that Plaintiff had the severe, medically determinable

18  impairments of lumbar spine degenerative disc disease, left shoulder separation, left

19  knee osteoarthritis, right wrist ulnar tunnel syndrome, fibromyalgia, obesity, gender

20  identity disorder, body dysphoria, major depressive disorder, anxiety disorder, post-

21  traumatic stress disorder, and marijuana use. AR 18. Based on the limitations stemming

22  from these impairments, the ALJ found that Plaintiff could perform a reduced range of

23  light work. AR 21. Relying on vocational expert ("VE") testimony, the ALJ found at step

24  four that Plaintiff could not perform his past relevant work, but could perform other light,

25

ORDER REVERSING AND REMANDING
DEFENDANT'S DECISION TO DENY BENEFITS - 2

1  unskilled jobs at step five of the sequential evaluation; therefore, the ALJ determined at

2  step five that Plaintiff was not disabled. AR 33.

3       1.  <u>Did the ALJ Properly Evaluate the Medical Opinion Evidence?</u>

4       Plaintiff assigns error to the ALJ's evaluation of medical opinions from Alyssa

5  Ruddell, Ph.D.; Brent Packer, M.D.; and Swilenn Almendarez, MA, LMHCA, MHP. Dkt.

6  20, pp. 3–15. Plaintiff also assigns error to the ALJ's reliance on the opinions of William

7  Chalstrom, Ph.D., Hayden Hamilton, M.D., and three non-examining medical

8  consultants; however, an ALJ is not required to give reasons for crediting (as opposed

9  to rejecting) medical opinion evidence. *Howard v. Barnhart*, 341 F.3d 1393, 1395 (9th

10  Cir. 1984).

11       Plaintiff summarizes much of the rest of the medical evidence but does not allege

12  specific errors concerning the ALJ's evaluation of any opinions or impairments other

13  than those discussed herein. Dkt. 20, pp. 4–13. The Court will not consider matters that

14  are not "'specifically and distinctly'" argued in the plaintiff's opening brief. *Carmickle v.*

15  *Commissioner, Social Sec. Admin.*, 533 F.3d 1155, 1161 n. 2 (9th Cir. 2008) (quoting

16  *Paladin Assocs., Inc. v. Mont. Power Co.*, 328 F.3d 1145, 1164 (9th Cir. 2003)).

17       A.  <u>Medical Opinion Standard of Review</u>

18       Under current Ninth Circuit precedent, an ALJ must provide "clear and

19  convincing" reasons to reject the uncontradicted opinions of an examining doctor, and

20  "specific and legitimate" reasons to reject the contradicted opinions of an examining

21  doctor. *See Lester v. Chater*, 81 F.3d 821, 830–31 (9th Cir. 1995).

22       The Social Security Administration changed the regulations applicable to

23  evaluation of medical opinions; hierarchy among medical opinions has been eliminated,

24

25

but ALJs are required to explain their reasoning and specifically address how they considered the supportability and consistency of each opinion. *See* 20 C.F.R. § 416.920c; Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01 (Jan. 18, 2017).

Regardless of whether a claim pre- or post-dates this change to the regulations, an ALJ's reasoning must be supported by substantial evidence and free from legal error. *Ford v. Saul*, 950 F.3d 1141, 1153-56 (9th Cir. 2020) (citing *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008)); *see also Murray v. Heckler*, 722 F.2d 499, 501–02 (9th Cir. 1983).

Under 20 C.F.R. § 416.920c(a), (b)(1)-(2), the ALJ is required to explain whether the medical opinion or finding is persuasive, based on whether it is supported and whether it is consistent.

B. <u>Opinion of Dr. Ruddell</u>

Alyssa Ruddell, Ph.D., evaluated Plaintiff on March 5, 2019, including reviewing Plaintiff's medical records and administering a clinical interview and mental status examination. *See* AR 843–46. Dr. Ruddell diagnosed Plaintiff with post-traumatic stress disorder, chronic pain, anxiety, and cannabis use disorder. AR 844. As a result of these impairments, Dr. Ruddell opined Plaintiff would be markedly, or significantly, limited in his ability to learn new tasks, adapt to changes in a routine work setting, and set realistic goals and plan independently. AR 845. In addition, she stated that Plaintiff would be moderately limited in his ability to understand, remember, or persist in tasks by following short and simple *or* detailed instructions; to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances, or

1   to perform routine tasks, without special supervision; to make simple work-related

2   decisions; to be aware of normal hazards and take appropriate precautions; to ask

3   simple questions or request assistance; to communicate and perform effectively in a

4   work setting; and, finally, to complete a normal workday or work week without

5   interruptions from psychologically based symptoms. AR 845.

6       In finding Dr. Ruddell's opinion unpersuasive, the ALJ reasoned that it was

7   inconsistent with (1) the overall medical evidence of record; (2) Dr. Ruddell's own notes

8   regarding Plaintiff's presentation, performance, and effort on examination; (3) evidence

9   that Plaintiff's symptoms were effectively managed with treatment; and (4) Plaintiff's

10  activities of daily living. AR 32.

11      With respect to the ALJ's first reason, a conflict between treatment notes

12  elsewhere in the record and an examining medical source's opinion may constitute a

13  legitimate reason to discount the opinions of the source. *See Valentine v. Comm'r of*

14  *Soc. Sec. Admin.*, 574 F.3d 685, 692–93 (9th Cir. 2009) (holding that a conflict with

15  treatment notes is a specific and legitimate reason to reject treating physician's opinion).

16  However, cursory treatment notes that describe a claimant's demeanor are of limited

17  utility in making this determination.

18      The records that the ALJ cited in support of this finding were from providers who

19  were evaluating plaintiff for conditions unrelated to his mental health. *See* AR 28 (citing

20  AR 562, 572, 575, 579, 584, 593, 595, 602, 606, 610, 612, 787, 797, 832, 840, 857,

21  878, 1354, 1363, 1370, 1375, 1381, 1384, 1386, 1399, 1400–01, 1404, 1415–18). And

22  a claimant's ability to be cooperative with his healthcare providers does not contradict

23  other providers' opinions that the claimant is markedly limited in his ability to learn new

24

25

ORDER REVERSING AND REMANDING
DEFENDANT'S DECISION TO DENY BENEFITS - 5

1    tasks, adapt to changes in a routine work setting, and set realistic goals and plan

2    independently. The Social Security Administration's regulation concerning evidence of

3    functioning in supportive situations is instructive here: "Your ability to complete tasks in

4    settings that are highly structured, or that are less demanding or more supportive than

5    typical work settings does not necessarily demonstrate your ability to complete tasks in

6    the context of regular employment during a normal workday or work week." 20 C.F.R.

7    404, Subpart P, App'x 1, § 12.00(C)(6)(b) (2016). Interactions with treatment providers

8    are not the equivalent of interactions with coworkers, supervisors, or the general public

9    in a work setting. *Id.* Nor, as here, do they demonstrate an inconsistency with Dr.

10   Ruddell's opinion.

11          With respect to the ALJ's second reason, an ALJ need not accept the opinion of

12   a treating source "if that opinion is brief, conclusory, and inadequately supported by

13   clinical findings." *Batson v. Commissioner of Social Security Administration*, 359 F.3d

14   1190, 1195 (9th Cir. 2004). Here, the ALJ pointed to a note from Dr. Ruddell's

15   evaluation form indicating Plaintiff's inconsistent results on the memory portion of the

16   mental status examination were "abnormal," or "[a]lternatively, it raises concerns about

17   effort." AR 846. In evaluating Dr. Ruddell's opinion, however, the ALJ stated that Dr.

18   Ruddell "raised concerns about [Plaintiff]'s poor effort during memory testing, yet she

19   assessed marked limitations." AR 32. Thus, the ALJ interpreted an alternative

20   explanation for Plaintiff's results as an affirmative statement that Plaintiff made a poor

21   effort in the memory portion of the examination. This was error – it is unsupported by

22   the record, based on a mischaracterization of Dr. Ruddell's statement regarding

23   Plaintiff's effort.

24

25
     ORDER REVERSING AND REMANDING
     DEFENDANT'S DECISION TO DENY BENEFITS - 6

1    The ALJ also fails to explain how Dr. Ruddell's opinion "is inconsistent with

2    [Plaintiff]'s presentation and performance during the consultative psychological

3    examination." AR 32. The lack of support for the ALJ's reasoning is highlighted by Dr.

4    Ruddell's notes indicating that Plaintiff displayed an anxious and depressed mood, poor

5    coordination, and restless psychomotor activity, in addition to paranoid thought content.

6    AR 846. The ALJ's reasoning was therefore not supported by substantial evidence.

7    With respect to the ALJ's third reason, when "a person who suffers from severe

8    panic attacks, anxiety, and depression" improves, that "does not mean that the person's

9    impairments no longer seriously affect her ability to function in a workplace." *Holohan v.*

10   *Massanari*, 246 F.3d 1195, 1205 (9th Cir.2001). "Occasional symptom-free periods—

11   and even—the sporadic ability to work—are not inconsistent with disability." *Lester v.*

12   *Chater*, 81 F.3d 821, 833 (9th Cir. 1995). Plaintiff's cyclical episodes of improvement

13   before the consultative examination do not contradict Dr. Ruddell's opinion regarding his

14   limitations.

15   With respect to the ALJ's fourth reason, inconsistency with a claimant's activities

16   may serve as a proper basis for rejecting a medical source's opinion. *Rollins v.*

17   *Massanari*, 261 F.3d 853, 856 (9th Cir. 2001). Yet disability claimants should not be

18   penalized for attempting to lead normal lives in the face of their limitations. *See Reddick*

19   *v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (citing *Cooper v. Bowen*, 815 F.2d 557, 561

20   (9th Cir. 1987) (claimant need not "vegetate in a dark room" in order to be deemed

21   eligible for benefits)).

22   Here, the ALJ found Dr. Ruddell's opinion inconsistent with Plaintiff's ability to

23   volunteer with his church, attend a comic book convention in Portland, Oregon, and

24

25

ORDER REVERSING AND REMANDING
DEFENDANT'S DECISION TO DENY BENEFITS - 7

perform responsibilities as a nanny (driving long distances, running errands, and performing household chores). AR 32. In addition, the ALJ noted Plaintiff spent several hours each day on the internet. AR 30.

The ALJ does not explain how any of these activities (other than attending a single comic book convention) negated Dr. Ruddell's opinion that Plaintiff would have marked limitations in his ability to learn new tasks, adapt to changes in a routine work setting, and set realistic goals and plan independently, or that Plaintiff would have moderate limitations in several other areas. As to the convention, the ALJ stated only that this event "presumably" involved being around large crowds. AR 30. The fact that Plaintiff was able to participate in an event (even if the Court presumes there were large crowds) for a single weekend does not contradict Dr. Ruddell's opinion regarding his limitations.

C. Opinion of Dr. Packer

On March 9, 2017, Brent Packer, M.D., reviewed Plaintiff's medical records and opined that these records showed the diagnosable impairments of degenerative disc disease (severity rating 4/5), diabetes mellitus (severity 3/5), and hepatic steatosis (severity 4/5). AR 743. Based on these physical impairments, Dr. Packer opined: Plaintiff would have marked environmental, or non-exertional, and postural restrictions; would be unable to perform most exertional activities; and that Plaintiff would require sitting for most of the day and only standing for brief periods. AR 742.

The ALJ found Dr. Packer's opinion unpersuasive, reasoning it was "grossly inconsistent" with (1) the overall medical evidence of record, (2) evidence that Plaintiff's pain was managed with conservative treatment, and (3) Plaintiff's activities of daily living. AR 30.

1    With respect to the ALJ's first reason, a conflict between treatment notes

2    elsewhere in the record and an examining medical source's opinion may constitute a

3    legitimate reason to discount the opinions of the source. *See Valentine v. Comm'r of*

4    *Soc. Sec. Admin.*, 574 F.3d 685, 692–93 (9th Cir. 2009). Yet ALJs may not "cherry-pick"

5    evidence from the record to support their findings. *See Holohan v. Massanari*, 246 F.3d

6    1195, 1207 (9th Cir.2001) (the ALJ erred by selectively picking some entries in the

7    record while ignoring others).

8    Here, the ALJ found that Dr. Packer's opinion conflicted with evidence that

9    "[Plaintiff]'s diabetes condition is generally well controlled and asymptomatic," and

10   "musculoskeletal and neurological findings were unremarkable." AR 30. However, the

11   unique symptoms and diagnostic methods of the fibromyalgia condition are important to

12   consider. *Revels v. Berryhill,* 874 F.3d 648, 662-665 (9th Cir. 2017). Fibromyalgia is

13   diagnosed "entirely on the basis of the patient's reports of pain and other symptoms."

14   *Benecke v. Barnhart*, 379 F.3d 587, 590 (9th Cir. 2004). Thus, "normal findings" in

15   objective physical exams should not be interpreted as being contradictory to Dr.

16   Packer's opinions and conclusions regarding the effects of Plaintiff's fibromyalgia.

17   In addition, the ALJ's finding that Plaintiff's diabetes was well controlled does not

18   contradict Dr. Packer's opinion, nor was it supported by substantial evidence. The ALJ

19   failed to address evidence of periods when this condition was not so "well controlled,"

20   including many periods during which Plaintiff's low blood sugar prevented him from

21   working, causing him almost to pass out. AR 1319, 1322. As the ALJ did not address

22   these instances or reconcile them with a finding that Plaintiff's condition was "well

23   controlled," the ALJ's finding was not supported by substantial evidence. The Ninth

24

25

Circuit has expressed disfavor with the practice of "cherry-pick[ing]" portions of medical evidence to support an ALJ's conclusion while omitting the portions that do not. *See Ghanim v. Colvin*, 763 F.3d 1154, 1164 (9th Cir. 2014). The ALJ's analysis in this instance suffered from this defect.

With respect to the ALJ's second reason, impairments that can be controlled effectively by medication or treatment are not considered disabling for purposes of determining eligibility for Social Security benefits. *See Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006). Yet a finding of improvement must be supported by substantial evidence. *Holohan v. Massanari*, 246 F.3d 1195, 1207-1208 (9th Cir.2001).

Here, the ALJ pointed to treatment notes in which Plaintiff stated that Toradol injections were more effective than other available medications for controlling his back pain and requested further treatment. AR 28 (citing AR 599, 750, 786, 828). This is not clear evidence of actual improvement as would be necessary to show an inconsistency with Dr. Packer's opinion.

With respect to the ALJ's third reason, inconsistency with a claimant's activities may be a proper basis for rejecting a medical source's opinion, yet disability claimants should not be penalized for attempting to lead normal lives. *See Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001); *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998).

Here, the ALJ pointed to Plaintiff's ability to drive long distances—from the rural community of Hoodsport, Washington, to an area near the City of Lacey (closer to Olympia, Washington) —and care for his brother's children as a nanny. AR 30. However, "many home activities are not easily transferable to what may be the more

grueling environment of the workplace, where it might be impossible to periodically rest or take medication." *See Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). And, here, the ALJ failed to reconcile the reliance on Plaintiff's driving with Plaintiff's testimony that he was only able to drive by reclining the driver's seat as fully as he could, stopping to stretch, and using a heat pad. AR 131. Nor did the ALJ address how, specifically, these activities contradicted any of Dr. Packer's opined limitations, especially when Dr. Packer opined that Plaintiff could sit for the majority of an eight-hour workday. AR 742. The ALJ's finding that Plaintiff's activities of daily living were inconsistent with Dr. Packer's opinion was not supported by substantial evidence.

D. Opinion of Ms. Almendarez

Swilenn Almendarez, a licensed mental health counselor associate and mental health professional, began treating Plaintiff on December 12, 2017, as part of a team of psychiatric care providers. AR 848. In a letter dated March 13, 2019, she stated that

> [Plaintiff] presents with a risk of deterioration due to his persistent depression and anxiety symptoms. [Plaintiff] has psychiatric history, with gains in functioning that have not solidified or cannot be maintained without treatment and/or supports. [Plaintiff's] care is complicated and requires multiple providers.

AR 735.

The ALJ found this opinion unpersuasive, reasoning that it (1) did not contain a functional assessment, (2) was inconsistent with records showing improvement with treatment, and (3) was inconsistent with Plaintiff's activities of daily living. AR 32.

With regard to the ALJ's first reason, a finding that a medical opinion does not contain specific functional limitations, or is otherwise too vague to be useful in making a determination, can serve as a valid reason for discounting that opinion. *See Meanel v.*

ORDER REVERSING AND REMANDING
DEFENDANT'S DECISION TO DENY BENEFITS - 11

1   *Apfel*, 172 F.3d 1111, 1114 (9th Cir. 1999) (holding that statement that the plaintiff

2   would have "decreased concentration skills" was too vague to be useful in the disability

3   determination). Here, Ms. Almendarez's only statement regarding functional limitations

4   was that Plaintiff had "gains in functioning that have not solidified or cannot be

5   maintained without treatment and/or supports." AR 848.

6       The ALJ properly found that the lack of clear definitions for such terms rendered

7   Ms. Almendarez's opinions about Plaintiff's abilities unhelpful to the RFC determination.

8   *See Ford v. Saul*, 950 F.3d 1141, 1156 (9th Cir. 2020) ("[T]he ALJ determined that Dr.

9   Zipperman did not provide useful statements regarding the degree of [the claimant's]

10  limitations. Here, the ALJ found that Dr. Zipperman's descriptions of [the claimant's]

11  ability to perform in the workplace as "limited" or "fair" were not useful because they

12  failed to specify ["the claimant's] functional limits. Therefore, the ALJ could reasonably

13  conclude these characterizations were inadequate for determining RFC."); *Meanel*, 172

14  F.3d at 1114.

15      Although Plaintiff challenges the ALJ's ultimate determination as to this opinion's

16  persuasiveness, he does not dispute the ALJ's finding that the opinion contained no

17  functional limitations. *See* Dkts. 20, 22. While the ALJ provided additional reasons for

18  discounting Ms. Almendarez's opinion, the Court need not assess whether these

19  reasons were proper, as any error would be harmless. *See Presley-Carrillo v. Berryhill*,

20  692 Fed. Appx. 941, 944–45 (9th Cir. 2017) (citing *Carmickle*, 533 F.3d at 1162

21  (although an ALJ erred on one reason he gave to discount a medical opinion, "this error

22  was harmless because the ALJ gave a reason supported by the record" to discount the

23  opinion").

24

25

1    2. <u>Did the ALJ Properly Evaluate Plaintiff's Subjective Symptom Testimony?</u>

2    Plaintiff assigns error to the ALJ's evaluation of his subjective symptom

3    testimony. Dkt. 20, p. 15.

4    To reject a claimant's subjective complaints, the ALJ's decision must provide

5    "specific, cogent reasons for the disbelief." *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir.

6    1995) (citation omitted).  The ALJ "must identify what testimony is not credible and what

7    evidence undermines the claimant's complaints." *Id.*; *Dodrill v. Shalala*, 12 F.3d 915,

8    918 (9th Cir. 1993).  Unless affirmative evidence shows the claimant is malingering, the

9    ALJ's reasons for rejecting the claimant's testimony must be "clear and convincing."

10   *Lester*, 81 F.2d at 834. "[B]ecause subjective descriptions may indicate more severe

11   limitations or restrictions than can be shown by medical evidence alone," the ALJ may

12   not discredit a subjective description "solely because it is not substantiated affirmatively

13   by objective medical evidence." *Robbins v. Social Sec. Admin.*, 466 F.3d 880, 883 (9th

14   Cir. 2006).

15   As to his physical symptoms, Plaintiff testified he experienced discomfort, pain

16   and numbness if he sat for more than ten minutes, stood for more than five to ten

17   minutes, or walked more than one city block. AR 107, 127, 129. In addition, he stated

18   that his feet would swell three- to four-times per week due to fibromyalgia, requiring him

19   to lay down with his legs over heart level for 20 to 30 minutes. AR 135–36. He also

20   testified to exertional difficulties, including: being unable to lift items heavier than a

21   gallon of milk; unable to reach forward, overhead, or sideways, due both to elbow pain,

22   a left shoulder separation, and neuropathy in his fingers. AR 132–33, 137.

23

24

25

1    As to psychological symptoms, Plaintiff testified to experiencing significant

2 anxiety and depression, both of which were worsened by gender dysphoria as a

3 transgender man. AR 116–17. He stated that his anxiety symptoms included panic

4 attacks that caused uncontrollable shaking, difficulty seeing, and stuttering. AR 132. He

5 also stated that he experienced more general stress, tearfulness, and discomfort when

6 interacting with other people. AR 115, 119.

7    The ALJ found Plaintiff's testimony unreliable due to its inconsistency with (1)

8 objective medical evidence, (2) Plaintiff's activities of daily living, and (3) Plaintiff's own

9 statements. *See* AR 22–28.

10    With respect to the ALJ's first reason, an inconsistency with the objective

11 evidence may serve as a clear and convincing reason for discounting a claimant's

12 testimony. *Regennitter v. Comm'r of Social Sec. Admin.*, 166 F.3d 1294, 1297 (9th Cir.

13 1998). But an ALJ's decision may not reject a claimant's subjective symptom testimony

14 "solely because the degree of pain alleged is not supported by objective medical

15 evidence." *Orteza v. Shalala*, 50 F.3d 748, 749-50 (9th Cir. 1995); *Byrnes v. Shalala*, 60

16 F.3d 639, 641-42 (9th Cir. 1995) (applying rule to subjective complaints other than

17 pain). Here, evidence the ALJ cited did not contradict Plaintiff's testimony.

18    The ALJ cited Plaintiff's ability to walk with a normal gait in physical examinations

19 without an assistive device. AR 28. But, a normal gait walking across a doctor's office

20 does not contradict testimony of needing to rest due to discomfort after walking one city

21 block, and Plaintiff did not testify to requiring an assistive device at all times. *See* AR

22 129.

23

24

25

1

2

3

4

5

6

7

8

The ALJ cited normal imaging of Plaintiff's lumbar spine and left knee, but as discussed above, fibromyalgia is characterized by an "absence of symptoms that a lay person may ordinarily associate with joint and muscle pain." *Rollins*, 261 F.3d at 863. The ALJ found Plaintiff was treated with Toradol injections, but failed to explain how taking medication designed for people with severe pain contradicts Plaintiff's testimony to suffering therefrom. AR 28. Similarly, the ALJ noted that Plaintiff took medications for his mental health symptoms, but did not explain how using this medication negated Plaintiff's complaints. *Id.*

9

10

11

12

13

With respect to the ALJ's second reason, an ALJ may discount a claimant's testimony based on daily activities that either contradict her testimony or that meet the threshold for transferable work skills. *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007). "Only if the level of activity were inconsistent with Claimant's claimed limitations would these activities have any bearing on Claimant's credibility." *Reddick*, 157 F.3d at 722.

14

15

16

17

18

19

20

21

22

23

The ALJ listed several activities, including the ability to drive long distances, "chase" the children in his care, "walking extensively in the city," attending a comic book convention, and volunteering at a church. AR 31. None of these activities (with the exception of driving) are described with sufficient specificity to show how they would contradict Plaintiff's testimony. Further, with regard to driving, the ALJ failed to reconcile her own finding with Plaintiff's testimony describing the difficulty of such driving and the measures necessary to ensure his comfort, including a heat pack and a reclined seat. AR 131. Nor does the ALJ explain how Plaintiff's ability to engage with familiar communities of his choosing, such as the church or comic-book convention, contradicted his more general testimony as to social anxiety and gender dysphoria

24

25

1    when interacting with the general public. AR 116–22. Conflict with activities was not a

2    clear and convincing reason to discount Plaintiff's testimony.

3            With respect to the ALJ's third reason, an ALJ may consider inconsistent

4    statements when evaluating the reliability of a claimant's testimony as a whole. *Fair*,

5    885 F.2d at 604 n.4. Yet in this situation, the ALJ's cited inconsistencies do not

6    affirmatively contradict Plaintiff's allegation regarding the severity of his symptoms.

7            For example, the ALJ found that Plaintiff "testified during the supplemental

8    hearing that he stopped working as a masseur due to debilitating anxiety" when "the

9    evidence shows that he stopped working as a masseur solely due to fibromyalgia and

10   low back pain." AR 29 (citing AR 583, 621, 1346). This is a mischaracterization of

11   Plaintiff's hearing testimony. Although he stated that anxiety – stemming from clients'

12   disapproval of his gender presentation -- was a significant issue in his massage work,

13   he did not point to this anxiety as the reason he quit doing massage work. *See* AR 118–

14   19.

15           Plaintiff's completion of a peer counseling course and performance of some

16   household chores, without any indication as to the frequency or intensity with which

17   Plaintiff engaged in any of these activities or the amount of time they took, does not

18   demonstrate any meaningful inconsistency with Plaintiff's subjective testimony. *Diedrich*

19   *v. Berryhill*, 874 F.3d 634, 643 (9th Cir. 2017) ("House chores, cooking simple meals,

20   self-grooming, paying bills, writing checks, and caring for a cat in one's own home, as

21   well as occasional shopping outside the home, are not similar to typical work

22   responsibilities.").

23

24

25

ORDER REVERSING AND REMANDING
DEFENDANT'S DECISION TO DENY BENEFITS - 16

1

2      C. <u>Harmless Error</u>

3          Harmless error principles apply in the Social Security context. *Molina v. Astrue*,

674 F.3d 1104, 1115 (9th Cir. 2012). An error is harmless only if it is not prejudicial to

4   the claimant or "inconsequential" to the ALJ's "ultimate nondisability determination."

5   *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006); *see Molina*,

6   674 F.3d at 1115. The determination as to whether an error is harmless requires a

7   "case-specific application of judgment" by the reviewing court, based on an examination

8   of the record made "'without regard to errors' that do not affect the parties' 'substantial

9   rights.'" *Molina*, 674 F.3d at 1118-19 (quoting *Shinseki v. Sanders*, 556 U.S. 396, 407

10  (2009)).

11         The ALJ's errors are not harmless because a proper evaluation of the medical

12  opinion evidence and Plaintiff's testimony could change the ALJ's assessment of

13  Plaintiff's RFC and may affect the hypotheticals provided to the Vocational Expert.

14      3. <u>Was the ALJ's RFC Determination Supported by Substantial Evidence?</u>

15         Finally, Plaintiff maintains the RFC and Step Five findings are not supported by

16  substantial evidence. Dkt. 20, pp. 17–18.

17         The ALJ committed harmful error, necessitating the ALJ's reassessment of Dr.

18  Ruddell's and Dr. Packer's opinions regarding Plaintiff's limitations, as well as Plaintiff's

19  testimony, on remand. *See* Sections IV.A.–IV.B., *supra*. Therefore, the ALJ must

20  reassess the RFC on remand. *See* Social Security Ruling 96-8p, 1996 WL 374184

21  (1996) (an RFC "must always consider and address medical source opinions");

22  *Valentine*, 574 F.3d at 690 ("an RFC that fails to take into account a claimant's

23  limitations is defective").

24

25

Because the ALJ must reassess Plaintiff's RFC, the ALJ is directed to re-evaluate Step Five to determine whether there are jobs existing in significant numbers in the national economy Plaintiff can perform given the RFC.

### 4. Remand With Instructions for Further Proceedings

"'The decision whether to remand a case for additional evidence, or simply to award benefits[,] is within the discretion of the court.'" *Trevizo v. Berryhill*, 871 F.3d 664, 682 (9th Cir. 2017) (quoting *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987)). If an ALJ makes an error and the record is uncertain and ambiguous, the court should remand to the agency for further proceedings. *Leon v. Berryhill*, 880 F.3d 1041, 1045 (9th Cir. 2017). Likewise, if the court concludes that additional proceedings can remedy the ALJ's errors, it should remand the case for further consideration. *Revels*, 874 F.3d at 668.

The Ninth Circuit has developed a three-step analysis for determining when to remand for a direct award of benefits. Such remand is generally proper only where

> "(1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand."

*Trevizo*, 871 F.3d at 682-83 (quoting *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014)). The Ninth Circuit emphasized in *Leon v. Berryhill* that even when each element is satisfied, the district court still has discretion to remand for further proceedings or for award of benefits. 880 F.3d 1041, 1045 (9th Cir. 2017).

Here, the parties agree that the proper remedy is a remand for further proceedings. As discussed above, the ALJ harmfully erred in evaluating medical opinion

evidence from Drs. Ruddell and Packer regarding Plaintiff's limitations, as well as Plaintiff's subjective symptom testimony. On remand, the ALJ is directed to re-evaluate the opinions of Drs. Weiss and Packer and Plaintiff's symptom testimony and allow plaintiff to provide additional testimony and evidence, as necessary to clarify the record.

<u>CONCLUSION</u>

Based on the foregoing discussion, the Court finds the ALJ erred when he/she determined plaintiff to be not disabled. Defendant's decision to deny benefits therefore is REVERSED and this matter is REMANDED for further administrative proceedings.

Dated this 6th day of December, 2021.

*Theresa L. Fricke*

Theresa L. Fricke
United States Magistrate Judge

ORDER REVERSING AND REMANDING
DEFENDANT'S DECISION TO DENY BENEFITS - 19